12-4521-cv
*Greathouse v. JHS Security Inc.*

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

## FOR THE SECOND CIRCUIT

————————

August Term, 2012

(Argued: June 10, 2013     Decided: April 20, 2015)

Docket No. 12-4521-cv

————————

DARNELL GREATHOUSE,

*Plaintiff-Appellant,*

-v.-

JHS SECURITY INC., MELVIN WILCOX,

*Defendants-Appellees.*

————————

B e f o r e:

POOLER and CARNEY, *Circuit Judges*, and KORMAN, *District Judge*.[*]

Appeal from a final judgment of the United States District Court for the Southern District of New York (Engelmayer, *J.*), adopting the Report and Recommendation of a Magistrate Judge (Gorenstein, *M.J.*), and declining to award damages, following entry of default, to Plaintiff-Appellant Darnell Greathouse on his retaliation claim brought under the Fair Labor Standards Act

_____

[*] The Honorable Edward R. Korman, of the United States District Court for the Eastern District of New York, sitting by designation.

("FLSA"), 29 U.S.C. §§ 215(a)(3), 216.  Greathouse alleged that his employer retaliated against him in violation of section 215(a)(3) when he orally complained to his employer that he had not received the pay he was due.  The District Court's ruling against Greathouse turned on our decision in Lambert v. Genesee Hospital, 10 F.3d 46 (2d Cir. 1993), which held that making an informal oral complaint to a supervisor did not amount to "fil[ing a] complaint" and therefore was not protected by the statute.  We now conclude that the Supreme Court's decision in Kasten v. Saint-Gobain Performance Plastics Corp., 131 S. Ct. 1325 (2011), which held that an oral complaint can serve as a predicate to an FLSA retaliation claim, casts doubt on the continued validity of our ruling in Lambert.  Accordingly, we overrule Lambert insofar as Kasten has not already done so.  We VACATE the judgment of the District Court, and REMAND the cause for further proceedings consistent herewith.

VACATED AND REMANDED.

Judge KORMAN concurs in part and dissents in part in a separate opinion.

——————————

PENN U. DODSON, AndersonDodson, P.C., New York, New York, *for Plaintiff-Appellant.*

ALEXANDER BOGDAN (Vilia B. Hayes, *on the brief*), Hughes Hubbard & Reed LLP, New York, New York, *amicus curiae counsel appointed by the Court in support of Defendants-Appellees.*

PAUL L. EDENFIELD, Attorney (M. Patricia Smith, Solicitor of Labor, Jennifer S. Brand, Associate Solicitor, Paul L. Frieden, Counsel for Appellate Litigation, *on the brief*), U.S. Department of Labor, Office of the Solicitor, Washington, D.C., *for amicus curiae* Acting Secretary of Labor *in support of Plaintiff-Appellant.*

2

Tsedeye Gebreselassie (Catherine K. Ruckelshaus, *on the brief*), National Employment Law Project, New York, New York, *for amici curiae* Make the Road New York, Brandworkers International, Restaurant Opportunities Center of New York, National Employment Law Project, Legal Aid Society, Asian American Legal Defense and Education Fund, and Urban Justice Center *in support of Plaintiff-Appellant.*

————————

Susan L. Carney, *Circuit Judge*:

In this appeal, we consider the effect of the Supreme Court's decision in Kasten v. Saint-Gobain Performance Plastics Corp., 131 S. Ct. 1325 (2011), on our 1993 decision in Lambert v. Genesee Hospital, 10 F.3d 46 (2d Cir. 1993), concerning what constitutes "fil[ing a] complaint" under the anti-retaliation provision of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 215(a)(3).

Section 215(a)(3) makes it unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint . . . related to" FLSA's provisions. In Lambert, we read section 215(a)(3) to require that an employee pursuing a claim for unlawful retaliation have done more than voice an equal pay complaint to a supervisor. 10 F.3d at 55-56. To serve as a predicate for an FLSA retaliation claim, we held, a complaint

3

1    must be "formal[ly]" filed, see id. – a condition that we have subsequently

2    interpreted to require (1) a written complaint, that is (2) filed with a government

3    agency.[1]

4        In its 2011 decision in Kasten, however, the Supreme Court held that the

5    section's pivotal phrase – "filed any complaint" – encompasses oral as well as

6    written complaints, so long as the complaint is "sufficiently clear and detailed for

7    a reasonable employer to understand it, in light of both content and context, as

8    an assertion of rights protected by the statute and a call for their protection."  131

9    S. Ct. at 1335.  To the extent, then, that Lambert turned on the oral nature of the

10   complaint made by the employee, Kasten rejected Lambert's analysis.  The

11   Kasten Court refrained, however, from addressing the second factor on which

12   the Lambert analysis hinged:  that the complaint must be directed to a

13   government agency, not merely to a supervisor in the ranks of the defendant

14   employer.  Kasten, 131 S. Ct. at 1336.  Although Kasten itself arose in the context

---

[1] See, e.g., Nicolaou v. Horizon Media, Inc., 402 F.3d 325, 328 (2d Cir. 2005) (explaining that in Lambert, "this Court held that Section [2]15(a)(3) . . . does not apply to retaliation taken in response to internal complaints, as opposed to retaliation occurring after an employee has cooperated with an investigation brought by a regulatory agency"); see also Parilla v. Salt & Pepper on 33rd St. Inc., No. 12 Civ. 6382 (AKH), 2013 WL 4536628, at *3 (S.D.N.Y. Apr. 8, 2013) ("In [Lambert], the Second Circuit found that two requirements had to be met in order for [section 215(a)(3)] to apply: 1) the complaint must have been a formal, written complaint; and 2) the complaint must have been made to a government agency, not to an employee's supervisor.").

4

1   of an oral complaint made to an employer, not a government agency, the <u>Kasten</u>

2   Court declined to address specifically whether retaliation for a complaint made

3   to an employer is actionable.  <u>See</u> <u>id.</u> at 1336.

4      <u>Kasten</u> overrules <u>Lambert</u>'s requirement that an employee seeking section

5   215(a)(3)'s protections file a written complaint.  As we discuss below, <u>Kasten</u> also

6   casts doubt on <u>Lambert</u>'s second requirement: that, for an employee's complaint

7   to fall within the protections of section 215(a)(3), it be made to a government

8   agency.  Indeed, we not long ago characterized <u>Kasten</u> (albeit in a footnote) as

9   effecting an "abrogation of our precedent in this area."  <u>Kuebel v. Black & Decker</u>

10   <u>Inc.</u>, 643 F.3d 352, 358 n.3 (2d Cir. 2011).  <u>Lambert</u>'s holding in this respect is at

11   odds, moreover, with the weight of authority in our sister circuits, and with the

12   consistently held position of the two authorities charged with section 215(a)(3)'s

13   enforcement:  the Secretary of Labor and the Equal Employment Opportunity

14   Commission ("EEOC").

15      Therefore, today, we overrule <u>Lambert</u> to the extent it holds that section

16   215(a)(3) requires an employee to have filed a complaint with a government

17   agency as a predicate for an FLSA retaliation claim.[2]  We conclude that an

---

[2] The panel's opinions have been circulated to all active members of this Court prior to filing.  <u>See</u>

5

1   employee may premise a section 215(a)(3) retaliation action on an oral complaint

2   made to an employer, so long as – pursuant to <u>Kasten</u> – the complaint is

3   "sufficiently clear and detailed for a reasonable employer to understand it, in

4   light of both content and context, as an assertion of rights protected by the statute

5   and a call for their protection."  131 S. Ct. at 1335.  Accordingly, because the

6   District Court denied Greathouse damages on his claim for retaliatory discharge

7   based entirely on <u>Lambert</u>'s rule, we vacate the judgment insofar as it relied on

8   <u>Lambert</u> and remand the cause for further proceedings consistent with this

9   opinion.

10

11                    **FACTUAL AND PROCEDURAL BACKGROUND**

12          We recite the facts as found by the Magistrate Judge in a report and

13   recommendation that was adopted by the District Court.  See <u>Greathouse v. JHS</u>

14   <u>Sec., Inc.</u>, No. 11 Civ. 7845 (PAE) (GWG), 2012 WL 3871523 (S.D.N.Y. Sept. 7,

15   2012), *adopted by* 2012 WL 5185591 (S.D.N.Y. Oct. 19, 2012).  Because both

16   defendants defaulted, the Magistrate Judge properly accepted as true the well-

17   pleaded factual allegations of Greathouse's complaint regarding liability, and

---

<u>Shipping Corp. of India v. Jaldhi Overseas Pte Ltd.</u>, 585 F.3d 58, 67 & n.9 (2d Cir. 2009).

1    provided for further proceedings to determine the appropriate damage award.

2    See SEC v. Razmilovic, 738 F.3d 14, 19 (2d Cir. 2013).

3         From September 2006 through October 14, 2011, plaintiff Darnell

4    Greathouse worked as a security guard for defendant JHS Security Inc. ("JHS").

5    Greathouse considered defendant Melvin Wilcox, the president and part-owner

6    of JHS, to be his "boss."  Greathouse, 2012 WL 3871523, at *2.  During the course

7    of his employment with JHS, Greathouse was the victim of a number of

8    improper employment practices, including non-payment and late payment of

9    wages, and improper payroll deductions.  Although Wilcox repeatedly told

10   Greathouse that he would receive his outstanding paychecks, those checks never

11   arrived.

12        On October 14, 2011, Greathouse complained to Wilcox that he had not

13   been paid in several months.  Wilcox responded, "I'll pay you when I feel like it,"

14   and, without warning, drew a gun and pointed it at Greathouse.  Greathouse,

15   2012 WL 3871523, at *2.  Greathouse understood that response as ending his

16   employment with JHS.

17        About two weeks later, Greathouse filed his complaint in the United States

7

1  District Court for the Southern District of New York.  In addition to various

2  FLSA and New York Labor Law ("NYLL") claims related to his missing and

3  improperly reduced wages,[3] he alleged that Wilcox and JHS (through Wilcox)

4  had effectively discharged him in retaliation for his October 14th complaint,

5  thereby violating section 215(a)(3) and the NYLL.

6      Several months later, after neither defendant appeared or filed an answer,

7  the clerk of court entered defaults against both.  The District Court then referred

8  the matter to a magistrate judge to evaluate Greathouse's claims for damages.

9  The Magistrate Judge issued a Report and Recommendation in September 2012,

10  recommending that the District Court enter a damages award in the total amount

11  of $30,658.50, plus prejudgment interest, for Greathouse's claims for unpaid

12  overtime, unpaid wages, improper deductions, and liquidated damages under

13  the NYLL.  <u>Greathouse</u>, 2012 WL 3871523, at *12.

14      As to the retaliation claim, however, the Magistrate Judge concluded that

15  <u>Lambert</u> barred an award because Greathouse had not filed a complaint with any

16  government agency or other prosecutorial authority, but had merely confronted

---

[3] Section 216, "Penalties," provides that an employee may sue an employer to recover legal or equitable relief, including the payment of lost wages, "as may be appropriate to effectuate the purposes of section 215(a)(3) . . . ."  29 U.S.C. § 216(b).  New York Labor Law does essentially the same.  <u>See</u> N.Y. Lab. Law § 663 (McKinney 2011).

8

1    his employer in person to demand his missing wages.  The Magistrate Judge

2    recognized that, under the Supreme Court's holding in <u>Kasten</u>, an oral complaint

3    may serve as a predicate for an FLSA retaliation claim.  The Magistrate Judge

4    correctly acknowledged, however, that <u>Kasten</u> did not overturn <u>Lambert</u> insofar

5    as we held there that a complaint made *to a supervisor* is not a complaint "filed"

6    under section 215(a)(3).

7           Greathouse filed objections to the Magistrate Judge's report in the District

8    Court, contesting, *inter alia*, the Magistrate Judge's finding that Greathouse was

9    not entitled to damages for his FLSA retaliation claim.  The District Court

10   rejected Greathouse's objection on this issue, agreeing with the Magistrate Judge

11   about the continued import of <u>Lambert</u>.  The District Court subsequently

12   adopted the Magistrate Judge's conclusions, subject only to two minor

13   exceptions not relevant here, and the District Court entered default judgment.[4]

14          On appeal, Greathouse argues primarily that, in light of <u>Kasten</u>, we should

15   overrule what remains of <u>Lambert</u> and squarely hold that FLSA prohibits

16   retaliation against employees who complain orally to their employers about

---

[4] These concerned the accounting for certain unlawful payroll deductions and unpaid wages, which marginally affected the amount of the District Court's award for liquidated damages under the NYLL. **[A.95-96, 98]**

9

1    perceived FLSA violations.  Because defendants defaulted in the District Court

2    and never filed an appearance in this Court, we appointed *pro bono* counsel to

3    argue, as *amicus curiae* in support of defendants, that the Supreme Court's

4    decision in <u>Kasten</u> did not abrogate our holding in <u>Lambert</u> and that the <u>Lambert</u>

5    rule with respect to intra-company complaints should survive.  The two

6    administrative authorities charged with administering FLSA – the EEOC and the

7    Secretary of Labor – filed *amicus* briefs in support of Greathouse's position.[5]

8

9                                **DISCUSSION**

10        Section 215(a)(3) forbids "any person" from "discharg[ing] or in any other

11   manner discriminat[ing] against any employee because such employee has *filed*

12   *any complaint* or instituted or caused to be instituted any proceeding under or

13   related to this chapter . . . ."  29 U.S.C. § 215(a)(3) (emphasis added).  As

14   described above, the Supreme Court held in <u>Kasten</u> that FLSA's anti-retaliation

15   provision "includes oral as well as written complaints."  131 S. Ct. at 1329.  The

16   Court overruled <u>Lambert</u> and our precedent following <u>Lambert</u> to the extent that

17   <u>Lambert</u> required an employee to have filed a written complaint to claim FLSA's

---

[5] Counsel for the Secretary also participated in oral argument.

10

1   protections.  Id. at 1330 (citing Lambert as a contrary decision).  But the Kasten

2   Court expressly declined to address the question whether an employer's

3   retaliation for an intra-company complaint is actionable under FLSA.[6]  Id. at

4   1336.

5          It is difficult to ignore, however, that the complaint at issue in Kasten was

6   lodged not with a government agency, but with an employer.  See id. at 1340-41

7   (Scalia, J., dissenting).  Although slightly different concerns animated the Court's

8   discussion in Kasten, an interpretation that excludes clearly stated complaints

9   from protection because they were made to the employer instead of a

10  government agency would run counter to the broadly remedial purpose that the

11  Kasten Court instructed FLSA serves.  See id. at 1334.  So, although we recognize

12  that the Court has not yet ruled on this precise question, we conclude that its

13  ruling in Kasten must be read as casting serious doubt on the second component

14  of our ruling in Lambert.

15         A.      **Our Holding in *Lambert***

16         In Lambert, three female employees alleged that their employer, Genesee

17  Hospital (the "Hospital"), retaliated against them in violation of the Equal Pay

---

[6] It explained that the issue was not before the Court, since the defendant employer had failed to mention the point in its opposition to the petition for certiorari.  Id. at 1336.

1    Act of 1963 ("EPA"), 29 U.S.C. § 206(d), a statute that amended FLSA.  10 F.3d at

2    50.  Two of the plaintiffs, Janine Lambert and Eva Baker, alleged that they

3    complained to their departmental supervisor and to a member of the Hospital's

4    employee-affairs department about Baker's salary, which in their view was

5    unfairly lower than that of a male employee in the department (Francis Dupre),

6    whose responsibilities were substantially equivalent to Baker's.  Id. at 51.

7        About one year after Lambert and Baker complained, the supervisor

8    selected Dupre to manage the department.  Id.  Citing that incident and others,

9    Lambert, Baker, and one of their female colleagues sued the Hospital, their

10   supervisor, and Dupre, alleging that Dupre's promotion over Baker was made in

11   retaliation for Lambert and Baker's complaints to their supervisor about Baker's

12   unequal pay.  Id.  This, they contended, violated the EPA and section 215(a)(3).[7]

13       The district court assumed that plaintiffs' allegations stated a retaliation

14   claim under section 215(a)(3), Lambert, 10 F.3d at 56, and the case proceeded to

15   trial, where a jury found for plaintiffs on their retaliation claim as well as on their

16   equal pay claim, id. at 51-52.  After trial, however, the district court granted

---

[7] The EPA amended FLSA and is codified under the same chapter.  An employer's retaliation for filing EPA complaints, like retaliation for filing FLSA complaints, is analyzed under section 215(a)(3).  See Lambert, 10 F.3d at 55.

12

1   defendants' motion for judgment notwithstanding the verdict.  <u>Id.</u> at 52.

2   Plaintiffs appealed the resulting dismissal.

3       On appeal, we held that the district court erred in granting judgment to

4   defendants on plaintiffs' retaliation claim because defendants had waived their

5   legal argument.  <u>Id.</u> at 54.  Nonetheless, we dismissed plaintiffs' section 215(a)(3)

6   claim, on our own accord, for failure to state a claim.  <u>Id.</u> at 56.  We determined

7   that the plain language of section 215(a)(3) – to "file[] any complaint" – "limits

8   the cause of action to retaliation for filing formal complaints, instituting a

9   proceeding, or testifying, but does not encompass complaints made to a

10   supervisor."  <u>Id.</u> at 55.  Because plaintiffs premised their claim on "simply oral

11   complaints to a supervisor," they had not stated a claim for retaliation under

12   section 215(a)(3).  <u>Id.</u> at 55-56.

13       The <u>Lambert</u> court's conclusion – that an employee pursuing a claim for

14   unlawful retaliation must do more than voice an equal pay complaint to a

15   supervisor to invoke section 215(a)(3)'s protections – is contrary to the weight of

16   authority in our sister circuits, even more so now than when <u>Lambert</u> was

17   decided.  Indeed, the First, Fourth, Fifth, Seventh, Eighth, Ninth, Tenth, and

1     Eleventh Circuits have all held that section 215(a)(3) protects employees from

2     retaliation for their complaints[] made to employers, and the Sixth Circuit has

3     assumed, without significant discussion, that complaints to an employer are

4     covered by section 215(a)(3). [8] The EEOC has long maintained the position that

5     the Act protects employees who make such intra-company complaints.

6     **B.**     **The Supreme Court's Holding in _Kasten_**

7     Nearly two decades after _Lambert_ was decided, after these developments

8     in other circuits and application of _Lambert_ within our own, the Supreme Court

9     granted certiorari in _Kasten_ to resolve a "conflict among the Circuits as to

10     whether an oral complaint is protected" by section 215(a)(3). 131 S. Ct. at 1330.

11     The question there arose from an employee's oral complaints to his shift

---

[8] See Minor v. Bostwick Labs., Inc., 669 F.3d 428, 432 (4th Cir. 2012) (holding that "remedial purpose of the statute requires that it protect from retaliation employees who file intracompany complaints"); Kasten v. Saint-Gobain Performance Plastics Corp., 570 F.3d 834, 838 (7th Cir. 2009), overruled on other grounds, 131 S. Ct. 1325 (2011) (concluding internal complaints protected under plain language of § 215(a)(3)); Hagan v. Echostar Satellite, L.L.C., 529 F.3d 617, 626 (5th Cir. 2008) (adopting "majority rule" that internal complaints are protected because "it better captures the anti-retaliation goals" of FLSA); Lambert v. Ackerley, 180 F.3d 997, 1005 (9th Cir. 1999) (en banc) (holding that section 215(a)(3) protections "extend[] to employees who complain to their employer"); Valerio v. Putnam Assocs. Inc., 173 F.3d 35, 43 (1st Cir. 1999) (Campbell, _J._) (concluding that "animating spirit of the [FLSA] is best served by a construction of § 215(a)(3) under which the filing of a relevant complaint with the employer no less than with a court or agency may give rise to a retaliation claim"); EEOC v. Romeo Cmty. Sch., 976 F.2d 985, 989-90 (6th Cir. 1992) (stating that unofficial complaints to an employer "constitute an assertion of rights protected under the statute"); Love v. RE/MAX of Am., Inc., 738 F.2d 383, 387 (10th Cir. 1984) (concluding that section 215(a)(3) applies to "the unofficial assertion of rights through complaints at work"); Brennan v. Maxey's Yamaha, Inc., 513 F.2d 179, 181 (8th Cir. 1975) (concluding that a complaint to company president "was an act protected from reprisals" under section 215(a)(3)).

1    supervisor and to other employees that their employer was violating FLSA by

2    failing to compensate them for time spent donning and doffing their work-

3    related protective gear.  Id. at 1329-30.  The Seventh Circuit had affirmed

4    summary judgment for the employer, ruling that FLSA does not protect oral

5    complaints.  Id. at 1330.

6        Deciding that the statutory phrase "filed any complaint," read in isolation,

7    is "open to competing interpretations," id. at 1330-31, the Supreme Court looked

8    to FLSA's basic objectives for interpretive guidance.  It also examined the range

9    of meanings that the words "filed" and "complaint" and the phrase "filed any

10   complaint" could bear and gave "a degree of weight" to the views of the agencies

11   charged with enforcing FLSA – the Department of Labor and the EEOC, which

12   argued for a broad reading of the section, one protective of employees.  Id. at

13   1335.

14       The Court concluded that "only one interpretation is permissible":  an oral

15   complaint is protected by FLSA's anti-retaliation provision if the complaint is

16   "sufficiently clear and detailed for a reasonable employer to understand it, in

17   light of both content and context, as an assertion of rights protected by the statute

15

and a call for their protection." Id. at 1331, 1335.  Despite framing the inquiry by

reference to what a "reasonable *employer*" would understand, id. at 1335

(emphasis added), the Court nevertheless expressly declined to address the

logically prior question whether FLSA applies, in the first instance, to complaints

made directly to employers, rather than to government agencies.  Id. at 1336.  It is

to that question that we now turn.

C.      **Looking Anew at the Statutory Language: "Filed Any Complaint"**

Both impelled and guided by Kasten, we now look anew at the statutory

interpretation question that we addressed of our own accord in Lambert, but that

the Kasten Court did not resolve:  does section 215(a)(3) prohibit retaliation

against employees for oral complaints made to employers?

1. **The phrase "filed any complaint" admits of more than one**
   **meaning**

A statute generally "should be enforced according to its plain and

unambiguous meaning."  United States v. Livecchi, 711 F.3d 345, 351 (2d Cir.

2013).  The "plainness or ambiguity of statutory language is determined by

reference to the language itself, the specific context in which that language is

used, and the broader context of the statute as a whole."  Robinson v. Shell Oil

16

1  <u>Co.</u>, 519 U.S. 337, 341 (1997).  If we determine that a statutory provision is

2  ambiguous, we then turn to canons of statutory construction for assistance in

3  interpreting the statute.  <u>See</u> <u>Daniel v. Am. Bd. of Emergency Med.</u>, 428 F.3d 408,

4  423 (2d Cir. 2005).

5       In <u>Lambert</u>, we determined that the plain language of section 215(a)(3)

6  prohibited only "retaliation for filing *formal* complaints, instituting a proceeding,

7  or testifying."  <u>Lambert</u>, 10 F.3d at 55 (emphasis added).  But when we look again

8  at section 215(a)(3), with the benefit of <u>Kasten</u> and the readings of our sister

9  circuits, we now conclude that the statutory language is not as plain and

10  unambiguous as it seemed when <u>Lambert</u> was decided.  <u>See</u> <u>Kasten</u>, 131 S. Ct. at

11  1330-31 (stating that section 215(a)(3) "may be open to competing

12  interpretations").  As the Supreme Court explained, "even if the word 'filed,'

13  considered alone, might suggest a narrow interpretation limited to writings, the

14  phrase '*any* complaint' suggests a broad interpretation that would include an

15  oral complaint."  <u>Id.</u> at 1332.

16       Guided by this discussion, we must reevaluate the distinction drawn in

17  <u>Lambert</u> and its progeny between "formal" complaints to government agencies

17

1   and "informal" complaints to supervisors.  First, we observe that the text of the

2   statute does not provide that a complaint must be filed "formally," or exclude

3   from its protections those complaints that are filed "informally."  In short:  it

4   does not use either word.  Nor does it expressly direct that, to be protected, a

5   complaint must be filed with a government agency or any particular entity.[9]

6   Second, even if the word "filed," considered alone, might seem to contemplate

7   lodging a complaint with a governmental body, the word's context counsels

8   against a narrow reading:  as the Supreme Court reasoned, the phrase "*any*

9   complaint*" suggests an expansive reading, one that could include complaints

10  filed with or expressed to an employer.

11      Citing Justice Scalia's dissent in <u>Kasten</u>, 131 S. Ct. at 1337 (Scalia, *J.*,

12  dissenting), *amicus curiae* in support of defendants argues that the phrase "filed

13  any complaint" clearly and unambiguously refers *only* to complaints made to

14  government agencies, because every other use of the word "complaint" in FLSA

15  refers to a governmental filing.  <u>See</u> 29 U.S.C. § 216(b) (explaining that the right

---

[9] In full, subsection 3 of section 215(a) provides that it is unlawful for any person:

> (3) to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.

1    to bring certain actions "shall terminate upon the filing of a complaint by the

2    Secretary of Labor"); <u>id.</u> § 216(c) (explaining that the statute of limitations for an

3    action for unpaid wages commences "on the date when the complaint is filed");

4    <u>id.</u> § 218c(b) (setting forth the "Complaint procedure" by which one may "seek

5    relief" by filing a complaint with the Department of Labor).  *Amicus* also

6    contends that the phrase "fil[ing a] complaint" is not commonly used to describe

7    the act of complaining to an employer.

8         But, as our sister circuits have recognized, the phrase "filed any

9    complaint" may also plausibly be interpreted to include intra-company

10   complaints.  The accepted definition of "to file," as the First Circuit has noted,

11   may include an employee's submission of a written letter of complaint to an

12   employer:  the concept is "sufficiently elastic to encompass an internal complaint

13   made to a private employer with the expectation the employer will place it on

14   file among the employer's official records."  <u>Valerio v. Putnam Assocs. Inc.</u>, 173

15   F.3d 35, 41-42 (1st Cir. 1999) (Campbell, *J.*).[10]  And, filing work-related grievances

---

[10] We also agree with the Fourth Circuit that the phrase "filed any complaint" is "correctly considered separately from the remainder of § 215(a)(3)."  <u>Minor</u>, 669 F.3d at 436.  As noted above, FLSA's anti-retaliation provision protects an employee who has "filed any complaint *or* instituted or caused to be instituted any proceeding . . . *or* has testified or is about to testify in any such proceeding." 29 U.S.C. § 215(a)(3) (emphasis added).  As the Fourth Circuit concluded, by phrasing section 215(a)(3) in the disjunctive, "Congress has indicated its intent that we consider each of these categories of protected

1     with employers is a common practice in many workplaces. <u>See, e.g.</u>, <u>Lambert v.</u>

2     <u>Ackerley</u>, 180 F.3d 997, 1004 (9th Cir. 1999) (en banc) (noting that "any

3     complaint" is clearly broad enough to encompass complaints made to employers,

4     and highlighting the widespread practice of "filing" grievances and complaints

5     with unions and employers before commencing other internal or external

6     proceedings). In addition, "filed any complaint" must be examined in context,

7     contrasting it with the neighboring phrase, "instituted any proceeding": to avoid

8     rendering one or the other surplusage, we may construe the first to contemplate

9     a communication (such as an intra-company complaint seeking a change in

10     company practice) that does not ordinarily trigger a "proceeding" (such as an

11     adjudicatory process).[11]

12         In light of these competing interpretations, we conclude that the statutory

13     phrase "filed any complaint" is variable in meaning and does not

14     unambiguously denote submission of complaints to government agencies alone.

15     To interpret the language of the statute, then, we must apply traditional tools of

---

activity independently." <u>Minor</u>, 669 F.3d at 436 (explaining that "'terms connected by a disjunctive [should] be given separate meanings'" (quoting <u>Reiter v. Sonotone Corp.</u>, 442 U.S. 330, 339 (1979))).

     [11] As noted above, <u>see</u> <u>supra</u> note 8, other circuits have drawn similar conclusions about the reach of the phrase "filed any complaint." <u>See</u> <u>Minor</u>, 669 F.3d at 432; <u>Kasten</u>, 570 F.3d at 838; <u>Hagan</u>, 529 F.3d at 626; <u>Lambert</u>, 180 F.3d at 1005; <u>Valerio</u>, 173 F.3d at 43; <u>White & Son Enters.</u>, 881 F.2d at 1011; <u>Love</u>, 738 F.2d at 387; <u>Brennan</u>, 513 F.2d at 181.

statutory interpretation.  These include looking to the purpose of FLSA, and

affording some degree of weight to the interpretations of the agencies charged

with enforcing it.  See Minor v. Bostwick Labs., Inc., 669 F.3d 428, 436 (4th Cir.

2012) (concluding that "'filed any complaint' is ambiguous as to whether

intracompany complaints are protected activity under the FLSA," and "mov[ing]

to other interpretive tools").

## 2.  Statutory purpose

Congress declared its intention in FLSA "to correct and as rapidly as

practicable to eliminate" labor conditions "detrimental to the maintenance of the

minimum standard of living necessary for health, efficiency, and general well-

being of workers," without substantially reducing employment or earning

power.  29 U.S.C. § 202.  To achieve this goal, FLSA sets forth minimum wage

standards, id. § 206, and establishes certain payroll practice requirements, id.

§§ 207, 211(c), among other mandates.  Because the government cannot directly

monitor every employer's payroll, FLSA also creates an enforcement mechanism

that relies in significant part on employees' complaints.  See Mitchell v. Robert

DeMario Jewelry, Inc., 361 U.S. 288, 292 (1960).  Congress enacted

section 215(a)(3) to "prevent[ ] fear of economic retaliation from inducing

workers quietly to accept substandard conditions," Kasten, 131 S. Ct. at 1333

(internal quotation marks omitted), and to foster an atmosphere protective of

employees who lodge such complaints.

We have repeatedly affirmed that "the remedial nature of the FLSA

warrants an expansive interpretation of its provisions so that they will have the

widest possible impact in the national economy." Irizarry v. Catsimatidis, 722

F.3d 99, 110 (2d Cir. 2013) (internal quotation marks and alterations omitted);

Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984) (same); see also

Zheng v. Liberty Apparel Co., 355 F.3d 61, 66 (2d Cir. 2003) (recognizing the

"remedial purpose" of FLSA).  FLSA's remedial goals counsel in favor of

construing the phrase "filed any complaint" in section 215(a)(3) broadly, to

include intra-company complaints to employers as well as complaints to

government agencies.  See, e.g., Valerio, 173 F.3d at 43 (concluding that the

"remedial and humanitarian purposes of [FLSA] . . . would hardly be furthered

by a narrow reading of § 215(a)(3)" (internal quotation marks and citations

omitted)).

1    Prohibiting retaliation against employees who make internal complaints

2  furthers the purposes of FLSA by encouraging speedier and more efficient

3  resolution of employee grievances, and resolving FLSA-related issues before

4  employees have lost significant wages or other benefits.  As the Supreme Court

5  cautioned in Kasten, limiting the protections of section 215(a)(3) to employees

6  who make complaints to government agencies "would discourage the use of

7  desirable informal workplace grievance procedures to secure compliance with

8  the Act."  131 S. Ct. at 1334.  Even before Kasten, the First Circuit opined that

9  "[b]y protecting only those employees who kept secret their belief that they were

10 being illegally treated until they filed a legal proceeding," a narrow

11 interpretation of FLSA "would discourage prior discussion of the matter between

12 employee and employer, and would have the bizarre effect both of discouraging

13 early settlement attempts and creating an incentive for the employer to fire an

14 employee as soon as possible after learning the employee believed he was being

15 treated illegally."  Valerio, 173 F.3d at 43.

16    The protective purpose of FLSA, recognized and acted on by the Kasten

17 Court, counsels unmistakably in favor of adopting a reading of the statutory

23

1    phrase "filed any complaint" that includes lodging an internal complaint with an

2    employer.

### 3. Administrative interpretations

4        We next examine another factor relevant to our analysis:  the views of the

5    EEOC and the Secretary of Labor, as the authorities charged with enforcing

6    FLSA.[12]  "The well-reasoned views of the agencies implementing a statute

7    constitute a body of experience and informed judgment to which courts and

8    litigants may properly resort for guidance . . . ."  United States v. Mead Corp.,

9    533 U.S. 218, 227 (2001) (internal quotation marks and brackets omitted).  The

10   weight appropriately afforded an agency interpretation that lacks the force of

11   law – such as an agency manual or litigation document – depends upon "the

12   thoroughness evident in its consideration, the validity of its reasoning, its

13   consistency with earlier and later pronouncements, and all those factors which

14   give it power to persuade, if lacking power to control."  Skidmore v. Swift & Co.,

15   323 U.S. 134, 140 (1944).  In Kasten, the Supreme Court ascribed "a degree of

---

[12] Congress has authorized the Secretary of Labor to enforce FLSA's substantive provisions.  29 U.S.C. § 216(c).  Like FLSA, the EPA was originally enforced by the Secretary of Labor, but in 1977, authority to enforce the EPA and jurisdiction over its regulations were transferred to the EEOC, an independent bipartisan commission chartered by Title VII of the Civil Rights Act, 42 U.S.C. § 2000e.  See Reorganization Plan No. 1 of 1978, 5 U.S.C. App. § 1.

24

1   weight" to the views of the EEOC and the Secretary, finding them "reasonable"

2   and "consistent with the Act," and explaining that "[t]he length of time the

3   agencies have held them suggests that they reflect careful consideration, not '*post*

4   *hoc* rationalizatio[n].'"  131 S. Ct. at 1335 (quoting <u>Motor Vehicle Mfrs. Ass'n of</u>

5   <u>United States, Inc. v. State Farm Mut. Automobile Ins. Co.</u>, 463 U.S. 29, 50 (1983)).

6          Since no later than 1998, the EEOC Compliance Manual – a document

7   intended, among other things, to "provide[ ] guidance and instructions for

8   investigating and analyzing claims of retaliation under the statutes enforced by

9   the EEOC" – has provided that employees are protected from retaliation "if an

10  individual explicitly or implicitly communicates to his or her employer or other

11  covered entity a belief that its activity" is unlawful.[13]  2 EEOC Compliance

12  Manual, Section 8: Retaliation § 8-II(B)(1) (May 20, 1998).[14]

13         The agencies' litigation positions on this question have also been consistent

14  for decades.  Both the Secretary and the EEOC have filed numerous briefs in the

15  various Courts of Appeals maintaining that section 215(a)(3) prohibits retaliation

---

[13] The Supreme Court has described the EEOC Compliance Manual as reflecting "a body of experience and informed judgment to which courts and litigants may properly resort for guidance" and thus "entitled to a measure of respect."  <u>Fed. Express Corp. v. Holowecki</u>, 552 U.S. 389, 399 (2008) (internal quotation marks omitted).

[14] <u>Available at</u> http://www.eeoc.gov/policy/docs/retal.pdf (last visited Mar. 29, 2015).

1    against employees who complain to their employers about FLSA violations. <u>See</u>

2    <u>Minor</u>, 669 F.3d at 439 (noting that "although it is not determinative, because the

3    Secretary and the EEOC have consistently advanced this reasonable and

4    thoroughly considered position, it adds force to our conclusion" (internal

5    quotation marks and alterations omitted)). We are advised that this litigation

6    position dates back to at least 1989 for the EEOC and 1999 for the Secretary. <u>See</u>

7    Brief for the EEOC as *Amicus Curiae* at 2; Brief for the Secretary of Labor as

8    *Amicus Curiae* at 27.

9      For the reasons relied on by the Supreme Court in <u>Kasten</u> as to the

10   question of oral complaints, then, we find that the agencies' longstanding,

11   consistent interpretation provides additional support for the view that to "file[]

12   any complaint" includes to submit a complaint to an employer.

13      **D.**    <u>**To "File[] Any Complaint" Encompasses Intra-Company**</u>
14            <u>**Complaints**</u>

15

16      Based on the foregoing analysis, we conclude that section 215(a)(3) does

17   not restrict its protections to employees who file formal, written complaints with

18   government agencies. Consistent with FLSA's text and remedial purpose, with

19   the approach adopted in <u>Kasten</u>, and with Congressional design to encourage

26

workers to report potential violations without fear of reprisal, we construe the

phrase "file[] any complaint" as encompassing oral complaints made to

employers in a context that makes the assertion of rights plain.  Our reading

derives support from the provision's consistent, longstanding interpretation by

the agencies charged with its enforcement.  It brings us in harmony, too, with the

decisions of the other Courts of Appeals to have considered the issue.[15]

Our reading is subject, however, to certain limitations.  As observed in part

by the <u>Kasten</u> Court, whether the "fil[ing of a] complaint" – especially an oral

complaint delivered directly to an employer – constitutes an act protected by

FLSA is a context-dependent inquiry.  In some circumstances, an employer may

find it difficult to recognize an oral complaint as one invoking rights protected

by FLSA.  It seems to us inconsistent with <u>Kasten</u> to elevate a grumble in the

hallway about an employer's payroll practice to a complaint "filed" with the

employer within the meaning of section 215(a)(3).  Indeed, the Supreme Court

observed in <u>Kasten</u> that "the phrase 'filed any complaint' contemplates *some*

degree of formality," 131 S. Ct. at 1334 (emphasis added), but described the level

of formality necessary in terms of the employer's interests in knowing when it

---

[15] <u>See</u> <u>supra</u> note 8.

need take care to avoid action that might be seen as retaliatory: "where the

recipient has been given fair notice that a grievance has been lodged and does, or

should, reasonably understand the matter as part of its business concerns," id.

Recognizing the potential for ambiguity in oral communications, yet

desiring not to impair the enforcement framework adopted in the statute, the

Kasten Court explained that "a complaint is 'filed' [only] when a reasonable,

objective person would have understood the employee to have put the employer

on notice that the employee is asserting statutory rights under the Act." Id. at

1335 (internal quotation marks and alterations omitted). The employee need not

invoke the Act by name, but, as the Court concluded, "[t]o fall within the scope

of the antiretaliation provision, a complaint must be sufficiently clear and

detailed for a reasonable employer to understand it, in light of both content and

context, as an assertion of rights protected by the statute and a call for their

protection." Id. Defining the exact contours of that standard is beyond the scope

of this opinion, but it would, for example, exclude from the concept of "fil[ing a]

1 complaint" a mere passing comment.[16]  This limitation, applied with the statute's

2 remedial purpose in mind, informs and cabins our holding today.

3     We decline, however, to address here the question whether Greathouse's

4 complaint provided an adequate basis on which to enter a default judgment

5 against his employer on his retaliation claim.  The decision whether to enter

6 default judgment is committed to the district court's discretion, see City of New

7 York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 131 (2d Cir. 2011), as is the

8 decision whether to conduct a hearing before deciding the default judgment

9 motion, see Finkel v. Romanowicz, 577 F.3d 79, 87 (2d Cir. 2009).   See also Fed.

10 R. Civ. P. 55(b)(2) ("The court may conduct hearings or make referrals . . . when,

11 to enter or effectuate judgment, it needs to . . . conduct an accounting; . . .

12 determine the amount of damages; . . . establish the truth of any allegation by

13 evidence; or . . . investigate any other matter.").[17]  We therefore remand the cause

---

[16] The state of the record in Lambert was such that it is difficult to ascertain whether the complaint and the setting in which it was communicated satisfied the conditions that the Kasten majority identified as necessary to give the employer "fair notice that a grievance has been lodged."  Kasten, 131 S. Ct. at 1334.  We note further that the complaints made to the supervisor in Lambert were particularly ill-documented and removed in time from the allegedly discriminatory action.

[17] Judge Korman, concurring in part and dissenting in part, infra, highlights, among other passages, text from Trans World Airlines, Inc. v. Hughes, 449 F.2d 51 (2d Cir. 1971), rev'd on other grounds, 409 U.S. 363 (1973), in which this Court asserted that a "default ha[s] the effect of admitting or establishing that the acts pleaded in the complaint violated the [applicable] law[]," id. at 70.  He suggests, on this basis and in light of defendants' defaults, that the District Court was required to award

1    to the District Court for a ruling in the first instance on Greathouse's default

2    judgment motion with respect to his claim for unlawful retaliation under FLSA.

3

## CONCLUSION

5    In sum, we overrule what is left of our holding in <u>Lambert v. Genesee</u>

6    <u>Hospital</u>, 10 F.3d 46 (2d Cir. 1993), and conclude, in accordance with all of our

7    sister circuits to have addressed the issue, that section 215(a)(3) prohibits

8    retaliation against employees who orally complain to their employers, so long as

9    their complaint is "sufficiently clear and detailed for a reasonable employer to

10   understand it, in light of both content and context, as an assertion of rights

11   protected by the statute and a call for their protection."  <u>Kasten</u>, 131 S. Ct. at 1335.

12   We therefore VACATE the District Court's judgment insofar as it relied on

13   <u>Lambert</u>, and REMAND the cause to the District Court to determine, in the first

---

Greathouse damages on his section 215(a)(3) retaliation claim, contending that the defaults conclusively established defendants' liability—and were not simply an admission to the well-pleaded allegations.  But even if this passage from <u>Trans World Airlines</u> remains good law in light of this Court's subsequent jurisprudence, <u>see, e.g.</u>, <u>Finkel</u>, 577 F.3d at 84 (The district court "is . . . required to determine whether [plaintiff's] allegations establish [defendant's] liability as a matter of law."), the Court in that case did not hold that a district court lacks discretion to investigate the basis for a plaintiff's claims before deciding whether to grant default judgment, <u>see generally</u> 10A Wright, Miller & Kane, Federal Practice & Procedure § 2684, at 28 ("The court has discretion to decide whether to enter a judgment by default, . . . and Rule 55(b)(2) empowers the district judge to hold hearings or 'order such references as it deems necessary and proper' to aid its execution of this discretion.").

1  instance, whether to grant Greathouse a default judgment on his retaliation claim

2  under section 215(a)(3), and if so, what damages, if any, Greathouse is entitled to

3  recover therefor.[18]

---

[18] The District Court deemed Greathouse's NYLL retaliation claim waived because he did not request any related damages in his submissions to the Magistrate Judge.  Greathouse, 2012 WL 5185591, at *6.  Since Greathouse concedes that if he succeeds on his FLSA retaliation claim under 29 U.S.C. § 215(a)(3), he may not recover duplicative damages under the NYLL, we do not reach his NYLL claim here.